UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

HAROLD BRUCE CALLAWAY                    §
    Fed. Reg. No.: 21128-380,             §
                       Movant,    §       Cause Number:MO-16-CV-0054-RAJ
v.                                       §                  MO-13-CR-0187-RAJ
                                      §
UNITED STATES OF AMERICA,                 §
                  Respondent.     §

## GOVERNMENT'S RESPONSE TO MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES NOW, The United States of America, by and through the United States Attorney for the Western District of Texas, and the undersigned Assistant United States Attorney, and files this the Government's Response to Movant's Motion under Title 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, and states that the Motion should in all things be denied and respectfully shows the Court as follows:

### I.
### Procedural History

On June 26, 2013, a Grand Jury in the Western District of Texas returned a six count Indictment against the Movant, Harold Bruce Callaway, charging him with having committed a violation of Title 18 U.S.C. § 2251(a), *Production of Child Pornography* (Counts 1-4); and a violation of Title 18 U.S.C. §1466A(a)(1), *Production of Obscene Visual Depiction of Sexual Abuse of a Child*; (Counts 5 and 6). (ECF No.[1] 1) Movant entered a plea of guilty to the six count Indictment on August 21, 2013. (ECF No. 19) During this hearing, a Factual Basis was

---

1.  "ECF No." in this context refers to the Electronic Case Filing number for the documents docketed in Cause Number: MO-13-CR-0187-RAJ-1.

offered by the Government to support the Movant's plea of guilty. (ECF No. 21)  Movant signed the Factual Basis indicating he agreed with the facts set out therein.

On December 12, 2013, Movant was sentenced to serve a sentence of 360 months confinement on Counts 1-4, with each sentence being served consecutive and 240 months confinement on Counts 5 and 6 to be served concurrently with each other and concurrently with the sentences to be served on Counts 1-4.  (ECF No. 38 and 41)  Movant appealed his case to the Fifth Circuit Court of Appeals on December 13, 2013.  (ECF No. 36)

On December 1, 2014, the Fifth Circuit affirmed Movant's conviction and sentence. Movant then sought a Petition for Writ of Certiorari to the United States Supreme Court on February 2, 2015.  Movant's Petition was denied on March 2, 2015.  Movant filed this pending Motion to Vacate his Sentence under Title 28 U.S.C. § 2255 on February 29, 2016.  (ECF No. 62).  On March 17, 2016, United States Magistrate Judge David Counts entered an Order for Service and Advisory, in which, amongst other things, the Court ordered the Government to respond detailing why Movant's motion should not be granted in the above entitled and numbered cause.

## II.
### Issues

In the instant motion, Movant claims his trial counsel:

(1) violated his Sixth Amendment right to effective assistance of counsel during plea discussion/negotiations by failing to advise Movant that he could receive a sentence greater than thirty (30) years;

(2) violated his Sixth Amendment right to effective assistance of counsel by failing to challenge the multiplicious Indictment filed against him resulting in a Fifth Amendment Double Jeopardy Claim; and

2

(3) violated his Sixth Amendment right to effective assistance of counsel by failing to
challenge the Government's use of hearsay testimony at sentencing;

## III.
## Argument and Authorities

### A. Ineffective Assistance of Counsel Claim - Overview

"To prevail on an ineffective assistance of counsel claim a defendant must show 'both
that: (1) trial counsel's performance was deficient and (2) that the deficient performance
prejudiced the defense.'" *United States v. Hayes*, 532 F.3d 349, 353 (5th Cir. 2008) (*quoting
United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002)); *see also Strickland v. Washington*,
466 U.S. 668, 687-94 (1984). "It is insufficient for a defendant merely to prove that counsel's
conduct was deficient; a defendant must have also been prejudiced by this ineffective legal
assistance." *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002). Unless the defendant
establishes both deficient performance and prejudice, the claim fails. *Id.*

"The first prong is only satisfied where the defendant shows that 'counsel's
representation fell below an objective standard of reasonableness.'" *Strickland*, 466 U.S. at 687.
To establish deficient performance, a defendant must show "that counsel made errors so serious
that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth
Amendment." *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007). "There is a strong
presumption that counsel's performance falls within the 'wide range of professional assistance.'"
*Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (*citing Strickland v. Washington*, 466 U.S.
668, 689 (1984)). "[T]he defendant bears the burden of proving that counsel's representation
was unreasonable under prevailing professional norms and that the challenged action was not
sound strategy." *Id.* (*citing Strickland*, 466 U.S. at 688-689). The Fifth Circuit has explained
that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for

constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Martin v. Dretke*, 404 F.3d 878, 885 (5th Cir. 2005) (*citing United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)). "Given the almost infinite variety of possible trial techniques and tactics available to counsel," the Fifth Circuit has stated that it "will not second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

"[S]crutiny of counsel's performance must be highly deferential." *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995), *citing Strickland*, 466 U.S. at 689. In explaining the "highly deferential" scrutiny to be afforded to the performance of counsel, the Supreme Court in *Strickland* stated:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "*might be considered sound trial strategy*." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (emphasis added). The *Strickland* Court further explained that "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct." *Id.* at 690. As set out below, Movant has failed to establish his trial counsel was ineffective or that his trial counsel's representation fell below an objective standard of reasonableness. Movant's Motion should be denied.

B. <u>Movant's Sixth Amendment right to effective assistance of counsel during plea discussion/negotiations was not violated</u>

Movant entered a plea of guilty to all counts of the Indictment without a plea agreement on August 21, 2013. During the course of the plea hearing the Magistrate Judge advised Movant of all of his rights pursuant to Fed. R. Crim P. Rule 11. Specifically, Movant was advised he was under oath. (exhibit A, , page, 2, line 18). Movant agreed he had sufficient time to discuss the case with his attorney, including any discussions concerning any defenses he might have. (Exhibit A , page 5, line 13-15) Movant stated he was satisfied with the legal representation he had received, and did not have any complaints. (Exhibit A, page 6, line 14-21)

The Magistrate Judge discussed with Movant the nature of each count of the Indictment, including the range of punishment. Movant acknowledged he understood the charges and the range of punishment he faced. (Exhibit A, page 13, line 12-25 and page 14, line 1-7) Additionally, the Magistrate Judge stated and Movant responded as follows:

> Court: Now, Mr. Callaway, let me tell you that --- you understand that the District Court can stack or run concurrently those—the punishment for those counts, for each of those six counts? Do you understand that?

> Defendant: Yes, Sir.

> Court: He's not required by law to do so. But if he makes the determination that those are separate and distinct offenses, makes all the appropriate decisions on that, and findings, then he can order that those punishments run consecutively. Do you understand that?

> Defendant: Yes, Sir

(Exhibit A, page 14, lines 14-25). Contrary to Movant's claim, he was admonished of the possibility that he faced consecutive sentences for all the counts in the indictment he was pleading guilty to. Notably, Movant did not request time from the Court to discuss this

information with his counsel.  The Magistrate Judge also advised Movant regarding how the United States Sentencing Guidelines would be used to determine his sentence through the preparation of a presentence investigation report, that the court would take that information into consideration, and that the District Judge would make the determination of his sentence.  Movant acknowledged he understood all of this.  (Exhibit A, pages 15 – 16).  Finally, the Magistrate Judge advised Movant that any advice he received from his attorney concerning any possible sentence was only an estimate or guess, prediction or projection.  Movant agreed with the Magistrate Judge's statement.  (Exhibit A, page 17, line 3-14)

The Magistrate Judge also inquired if Movant's plea was free and voluntary, that no one had threatened or coerced him to plead guilty, or made any promises to him concerning his sentence.  Movant responded no to each inquiry from the Magistrate Judge.  (Exhibit A, page 20, line 19-25, page 21, line 1-16.)  Following all of the Magistrate Judge's admonishments, Movant plead guilty to the six count Indictment.  (Exhibit A, page 26, lines 19-25; page 27, lines 1-20)

Subsequent to the plea hearing, the Magistrate Court made Findings of Fact and Recommendations to the District Judge concerning Movant's pleas of guilty.  (ECF No. 23)  The Magistrate Judge included in his findings that Movant had been admonished that any punishment he received could be served consecutively.  These findings are further supported by his trial counsel.  (Exhibit B)  These facts contradict Movant's claims and serve as sufficient evidence to deny Movant's claim.

Leading up to his sentencing hearing, the Government alleged in two separate Sentencing Memorandums that the appropriate guideline range for the District Court to follow was set out in the presentence report dated December 3, 2013.  This report recommended a sentence of life.  In

6

order to carry out this sentence, the Government urged that the sentences on each count run consecutively.

In all sentencing proceedings, the District Court should begin by consulting the Sentencing Guidelines to correctly calculate the applicable guideline range for that particular offense. Under the pre-*Booker*[2] mandatory guidelines, the sentencing courts could only impose consecutive sentences in limited circumstances. However, post-*Booker*, the guidelines are advisory and the sentencing courts have greater discretion to deviate from them. This greater discretion also applies to the imposition of consecutive sentences. *United States v. Ronquillo*, 508 F.3d 744, 750-751 (5th Cir. 2007).

When a defendant is sentenced on multiple counts under a single indictment, the district court must correlate the defendant's combined offense level with the appropriate criminal history category, and arrive at a sentencing range for the convictions. This represents the defendant's "total punishment range." See *United States v. Kings*, 981 F.2d 790, 797 (5th Cir.), cert. denied, 508 U.S. 953, 113 S.Ct. 2450, 124 L.Ed.2d 666 (1993). Against this background, the district court evaluates the facts and circumstances of the case and identifies what it deems to be the appropriate sentence for the defendant's convictions. This is referred to as the "total punishment." See *id.* at 798. Before imposing this sentence, however, the district court must also calculate the defendant's statutory maximum sentence for the offenses and determine whether the sentences should run concurrently or consecutively. See *id.*

---

2. The United States Supreme Court held in *Booker v. United States,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2 621 (2005) that the guidelines are no longer mandatorily binding on the sentencing court and a sentence outside the guidelines will be upheld so long as it is "reasonable."

(1)  U.S.S.G. Determination of a Consecutive Sentence in this Case

U.S.S.G. §5G1.2 (November 2013) sets forth the method of implementing the total sentence of imprisonment where there is more than one count of conviction.  Specifically, U.S.S.G. § 5G1.2(d) provides in pertinent part:

> "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment."[3]

Thus, U.S.S.G. §5G1.2(d) allows the imposition of consecutive sentences as long as the total sentence remains within the total punishment range.  See *Kings*, 981 F.2d at 797-98 (holding that fact that statutory maximum of one count was within total punishment range did not prohibit court from imposing another consecutive sentence because the total sentence was less than the maximum total punishment).  The total punishment can be more than the maximum statutory penalty for any particular offense if the defendant is sentenced on multiple counts.  See *United States v. Segler*, 37 F3d. 1131, 1135 (5th Cir. 1994).  The maximum statutory penalty sets the upper limit that may be imposed for a particular count.  *Id.* at 1136.

In this case, the maximum statutory penalty for Counts 1 through 4 was 360 months and 240 months for Counts 5 and 6..  The Court determined Movant's Total Offense Level was a level 42, with no additional adjustments and with the defendant's criminal history being category I, the total punishment range was 360 months to life.  Had the Court decided the sentences on each count should run concurrently, the most the defendant could be ordered to serve is 360 months, far short of the total punishment range reflected in the PSR.

---

3.  Moreover, the Commentary to this section provides that " [i]f no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment."  See U.S.S.G. § 5G1.2, comment.

In order to implement the total sentence of imprisonment in this case, the Court had to consider imposing be served consecutively. This result was necessary because the sentence imposed on the count carrying the highest statutory maximum was inadequate to achieve the total punishment.

(2) Statutory Authority for a Consecutive Sentence in this Case

As an alternative to the foregoing, consecutive sentences on the individual counts in this case were reasonable and the trial court exercised its discretion appropriately and sentenced the Defendant accordingly taking into account the provisions of Title 18 U.S.C. §§3553 and 3584.

Title 18, United States Code, Section 3584 provides in part as follows:

(a)     If multiple terms of imprisonment are imposed on a defendant at the same time . . . the terms may run concurrent or consecutively . . . Multiple terms of imprisonment imposed at the same time run concurrently, unless the court orders or the statute mandates that the terms are to run consecutively.

(b)     The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is imposed, the factors set forth in section 3553(a).

Title 18, United States Code, Section 3553(a) states:

(a)     The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

   (1)     The nature and circumstances of the offense and the history and characteristics of the defendant: [and]

   (2)     The need for the sentence imposed –
           A. to reflect the seriousness of the offense,
           B. to promote respect for the law,
           C. to provide just punishment for the offense;
           D. to afford adequate deterrence to criminal conduct;
           E. to protect the public from further crimes of the defendant; and

F.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed. 2d 392 (1996).  Here, the testimony and evidence supported the Court's determination and findings that Movant be sentenced to serve a sentence of 360 months on Counts 1 through 4 consecutively.  Movant's trial counsel effectively represented Movant during the sentencing hearing in an effort to reduce Movant's sentencing exposure.  In the end, these efforts did not prevail.  Movant now complains of the result but his complaints fall woefully short that his trial counsel was ineffective or that his trial counsel's representation fell below an objective standard of reasonableness.  See also, trial counsel's affidavit, Exhibit B.

Finally, Movant appealed the District Court's sentencing determination arguing to the Fifth Circuit that his sentence imposed was greater than necessary to satisfy the sentencing goals provided in Title 18 U.S.C. §3553(a).  The Government would urge that when a matter is briefed and decided on appeal, Movant may not raise the same matter under Title 28 U.S.C. §2255.  *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.), *cert. denied*, 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 660 (1986).  Movant is attempting to relitigate the same matter he previously lost at sentencing, waived during plea negotiations and his plea of guilty to all counts of the Indictment, and then lost on appeal - styled under a claim of ineffective assistance of counsel.

As this claim does not raise factual matters that give rise to ineffective assistance of counsel, this Court should find that Movant's trial counsel's conduct did not fall below an

10

objective standard of reasonableness, and thus Movant's claims for relief fail on the first prong. *See Strickland*, 466 U.S. at 687 ("The first prong is only satisfied where the defendant shows that 'counsel's representation fell below an objective standard of reasonableness.'") Further, even if the trial counsel's performance had fallen below an objective standard of reasonableness, the proceedings were not affected by any such errors and the sentencing issues were fully litigated at during his sentencing hearing and on appeal.

C. Movant's Sixth Amendment right to effective assistance of counsel was not violated because Movant's Counsel failed to challenge the multiplicious Indictment filed against him resulting in a Fifth Amendment Double Jeopardy Claim;

In Movant's second claim, he asserts his trial counsel was deficient in failing to seek a dismissal of Counts 2 through 4 of the Indictment. Movant believes these counts should have been dismissed because they were "multiplicious" to Count One. Had these Counts been dismissed, Movant asserts he could only have been sentenced to serve a period of 360 months confinement.[4]

"Multiplicity" is the charging of a single offense in more than one count of an Indictment. *United States v. Heath*, 970 F.2d 1397 (5th Cir. 1992). However, "An indictment is not multiplicious if each count requires proof of a fact which the other does not." *United States v. Roberts*, 783 F.2d 767, 769 (9th Cir. 1985); see *United States v. Blockburger*, 284 U.S. 299, 304 (1932). In *United States v. Reedy*, 304 F.3d 358, 365-66 (5th Cir. 2002), the Fifth Circuit wrote:

> "where overlapping statutory provisions create the risk of multiplicity, the test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not. *United States v. Nguyen*, 28 F.3d 477, 482 (5th Cir. 1994). Where a multipart transaction raises the prospect of

---

4. Interestingly, Movant makes no mention regarding Counts 5 and 6 and how the imposed sentence on these Counts could have still impacted his sentence even if Counts 2 through 4 been dismissed. For example, the Court could have required the sentences on each of these counts be served consecutively to Count One.

multiplicity under a single statute, the question becomes whether separate and distinct prohibited acts, made punishable by law, have been committed." (internal quotation marks omitted)

To determine whether separate and distinct prohibited acts, made punishable by law, have been committed, the court looks to the allowable unit of prosecution, starting with the language of the statute. *United States v. Reagan*, 596 F.3d 251, 253 (5th Cir. 2010). In this matter, Counts one through four of the Indictment, charged Movant with having produced a separate and distinct sexually explicit image of a minor in violation of Title 18 U.S.C. §2251(a) in each count. Each image constituted a separate and chargeable "unit of prosecution". Additionally, Count Four alleges an offense on a date different than the offense date for Counts one through three. This is equally fatal to Movant's argument.

Counts one through four of the Indictment charged Movant with a violation of Title 18 U.S.C. § 2251(a), *Production of Child Pornography*. Counts one through three alleged the offense occurred on February 2, 2013. Count four alleged the offense to have occurred on February 3, 2013. Movant contends, however, that because these offenses involved the same victim, that it was one continuous offense, or in his words, "the unit of prosecution, is the use of a minor. There was only one minor "used," in this case, therefor only one count of "use of a minor." (ECF No. 62, page 5) Movant's theory and argument on this matter is incorrect and should be denied.

In *United States v. Esch*, 832 F.2d 531, 541 (10th Cir. 1987), the Court wrote:

"18 U.S.C. §2251(a) proscribes the use of a minor to engage in 'any sexually explicit conduct for the purpose of producing *any visual depiction* of such conduct.' As we construe the statute, each use of a minor to create a visual depiction constitutes a separate and distinct violation, and thus represents the correct unit of prosecution."[5]

_____

In finding the indictment properly charged separate counts for each of the photographs produced, the Tenth Circuit decided,

> "...our conclusion that the correct unit of prosecution is each use of the children to create a visual depiction is supported by legislative history, which indicates an unequivocal intent to protect children from the abuse inherent in the production of sexually explicit material. *Id.* at 542.

See also, *United States v. Fee*, 491 Fed.Appx. 151, 157 (11th Cir. 2012), (the text of section 2251(a) makes clear that Congress proscribed each discreet visual depiction of a minor as a separate offense.)

Contrary to Movant's claims, these counts are not multiplicious simply because the images were created using the same victim. Further, as discussed in *United States v. Roberts*, above, "An indictment is not multiplicious if each count requires proof of a fact which the other does not." 783 F.2d 767 at 769. Here, Count four alleges an offense committed on another day than the offenses set out in Counts one through three. Movant's "multiplicious claim would fail as to Count four on that basis alone and Movant's trial counsel would not be ineffective for filing a frivolous motion. See, *United States v. Sandoval-Moschetto*, 2013 WF 321767 (WD Tex. 2013) citing *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite."). Because Movant cannot sustain his burden on this matter the claim must be denied.

---

5. The Tenth Circuit Court also observed the key element of the offense is the use of a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction of such conduct.

D. <u>Movant's Sixth Amendment right to effective assistance of counsel not violated because Movant's counsel failed to challenge the Government's use of hearsay testimony at sentencing</u>

Movant alleges his trial counsel provided ineffective assistance during the sentencing hearing by failing to object to the admittance of hearsay evidence concerning his past criminal history to support the finding for the sentencing enhancement allowable under U.S.S.G. § 2G2.2(b)(5), "pattern of activity.". Movant believes that but for hearsay statements admitted during his sentencing hearing, his sentence would have been much lower.

The record from the sentencing hearing, as well as trial counsel's affidavit, (Exhibit B), reflect Movant's counsel vigorously defended Movant during the hearing. Movant's counsel presented an argument against the application of a sentencing enhancement pursuant to U.S.S.G. §4B1.5 which the District Judge granted in Movant's favor. Counsel also cross examined government witnesses and presented evidence on behalf of Movant. In the end, the result was not to Movant's liking and he seeks to blame others for his criminal conduct. Movant's claim should be denied.

During a sentencing hearing, "[t]he district court may consider any information which has sufficient indicia of reliability to support its probable accuracy." *United States v. Ramirez*, 271 F.3d 611, 613 (5th Cir. 2001) citing, *United States v. Vital*, 68 F.3d 114, 120 (5th Cir.1995).) The evidence a sentencing court can consider could include hearsay statements provided the statements have sufficient indicia of reliability. See, *United States v. Young*, 981 F.2d 180, 187 (5th Cir. 1992) citing *United States v. Galvan*, 949 F.2d 777, 784 (5th Cir.1991). ("For purposes of due process, the information relied on by the Court in determining an appropriate sentence must have 'some minimal indicium of reliability' and 'bear some rational relationship to the decision to impose a particular sentence.'") In fact, the district court in this case made a

14

credibility determination of the evidence presented prior to issuing the sentence.[6]   Movant's belief that hearsay testimony and evidence is not permitted at a sentencing hearing is far off base.

Indeed, as Movant's trial counsel sets out in his affidavit, (Exhibit B), the Federal Rules of Evidence expressly exclude sentencing hearings from the hearsay rules. Fed.R.Evid. 1101(d)(3).  Though the circuit courts at times have been split over the issue, the Fifth Circuit has held that the introduction of hearsay does not violate the "severely restricted" confrontation rights of defendants at sentencing. *United States v. Goldfaden*, 959 F.2d 1324, 1330 (5th Cir. 1992) citing *United States v. Rodriguez*, 897 F.2d 1324, 1328 (5th Cir.), cert. denied, 498 U.S. 857, 111 S.Ct. 158, 112 L.Ed.2d 124 (1990).  Even though Movant believes otherwise, his trial counsel's decision not to raise or make a frivolous objection is not ineffective assistance and is not grounds for relief under § 2255. *United States v. Sandoval-Moschetto*, 2013 WF 321767 (WD Tex. 2013) citing *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite."); and *United States v. Coleman*, 2002 WL 1758179, at *4 (N.D.Tex. July 26, 2002).

## IV.
## Certificate of Appealability

The final order in a habeas corpus proceeding may not be appealed by the petitioner unless the Fifth Circuit Court of Appeals issues a certificate of appealability.  The governing law provides that:

> (c) (2) A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right.
> (c) (3) The certificate of appealability ... shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

---

6. Specifically, the District court Judge found Movant's testimony not to be credible.

Title 28 U.S.C. § 2253(c). See *Lackey v. Johnson*, 116 F.3d, 151 (5th Cir. 1997) (holding that a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review to those issues.) A Movant satisfies the certificate of appealability standard by demonstrating that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong." See *Miller–El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *Reed v. Stephens*, 739 F.3d 753 (5th Cir. 2014).

The Government contends that Movant has not made a "substantial showing of the denial of a constitutional right." Title 28 U.S.C. § 2253(c)(2). Movant's claim should be denied and the Court should deny Movant a certificate of appealability.

## V.
## Evidentiary Hearing

Since the issues before this court can be resolved on the basis of the conclusive record in this case, an evidentiary hearing is unnecessary. *United States v. Santora*, 711 F.2d 41 (5th Cir. 1983). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where Petitioner's allegations are affirmatively contradicted by the record." *United States v. Guerra*, 588 F.2d 519, 521 (5th Cir. 1979), *cert. denied*, 450 U.S. 934 (1981).

## Conclusion

The Government asserts that the Court should deny the Movant's §2255 motion.  In the instant case, Movant has raised several matters concerning his trial counsel's performance which he cannot sustain.  The Court should deny the motion based on this foregoing Response.

Respectfully submitted,

RICHARD L. DURBIN, JR.

UNITED STATES ATTORNEY

By:___ /s/
WILLIAM F. LEWIS, JR.
Assistant United States Attorney
Texas Bar No. 12314550
400 West Illinois, Suite 1200
Midland, Texas 79701
(432) 686-4110
(432) 686-4131 fax

**Certificate of Service**

This is to certify that on the 20th  day of May, 2016, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system and a copy was mailed to the following:

Harold Bruce Callaway
Federal Register No. 21128-380
USP Tucson
U.S. Penitentiary
P.O. Box 24550
Tucson, Arizona  87534-4550

By: ___/s/
William F. Lewis, Jr.
Assistant U.S. Attorney

17

August 21, 2013

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

MIDLAND-ODESSA DIVISION

THE UNITED STATES OF AMERICA,   * Case No. MO-13-CR-187
                                *
     Plaintiff,                 *
                                *
        v.                      *
                                *
HAROLD BRUCE CALLAWAY,          *
                                *
     Defendant.                 *
* * * * * * * * * * * * * * * * August 21, 2013

-------------------------------------------------------

REARRAIGNMENT/PLEA HEARING

BEFORE THE HONORABLE DAVID COUNTS

UNITED STATES MAGISTRATE JUDGE

-------------------------------------------------------

APPEARANCES:

For the Plaintiff:    UNITED STATES ATTORNEY'S OFFICE
                      By:  AUSA William Tatum
                      400 W. Illinois Street, Ste. 1200
                      Midland, Texas  79701


For the Defendant:    FIVECOAT & ROGERS, PLLC
                      By:  Mr. Raymond Keith Fivecoat
                      214 W. Texas Avenue, Ste. 811
                      Midland, Texas  79701


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

GOVERNMENT
EXHIBIT
____A____

Federal Court Reporters of San Antonio, Inc.
210-340-6464

August 21, 2013

Page 2

```
 1              THE COURT:  Now we'll call U.S. versus
 2   Harold Bruce Callaway, MO-13-CR-187, for rearraignment
 3   and plea.
 4              MR. TATUM:  William Tatum for the
 5   Government.
 6              MR. FIVECOAT:  Ray Fivecoat for
 7   Mr. Callaway.  Present and ready to proceed,
 8   your Honor.
 9              COURTROOM DEPUTY:  Mr. Fivecoat, use the
10   microphone, please.
11              MR. FIVECOAT:  Ray Fivecoat with
12   Mr. Callaway.  We're present and ready to proceed.
13              THE COURT:  Thank you, Mr. Fivecoat,
14   Mr. Tatum.
15        Mr. Callaway, if you'd raise your right hand,
16   please, and sworn.  Be sure and speak into the
17   microphone.  Okay?
18              (Defendant sworn by the Courtroom Deputy.)
19              THE COURT:  Thank you.  You may lower your
20   hand.
21        Mr. Callaway, are you Harold Bruce Callaway?
22              THE DEFENDANT:  Yes, sir.
23              THE COURT:  Is that your true name?
24              THE DEFENDANT:  Yes, sir.
25              THE COURT:  Mr. Callaway, do you suffer from
```

August 21, 2013

Page 3

1    any mental condition or take any drugs that might

2    interfere with your ability to understand what we're

3    doing today?

4              THE DEFENDANT:  I'm sorry, sir?  Repeat

5    that, sir?

6              THE COURT:  Do you -- Do you have any mental

7    condition or take any drugs that might interfere with

8    your ability --

9              THE DEFENDANT:  No, sir.

10             THE COURT:  -- to understand what we're

11   doing today?

12             THE DEFENDANT:  No, sir.

13             THE COURT:  I'm sorry?

14             THE DEFENDANT:  No, sir.

15             THE COURT:  Okay.  Be sure to wait till I

16   get finished with the question before we -- you say.

17   That way, on the recording, it won't come off where

18   we're stepping all over each other.  Okay?

19             THE DEFENDANT:  Okay.

20             THE COURT:  Mr. Fivecoat, do you have any

21   doubt as to Mr. Callaway's competence to enter a

22   guilty plea?

23             MR. FIVECOAT:  No, your Honor.

24             THE COURT:  Mr. Tatum, does the Government

25   have any information?

Federal Court Reporters of San Antonio, Inc.
210-340-6464

August 21, 2013

Page 4

```
 1          MR. TATUM:  Your Honor, the Government
 2    doesn't have any information concerning the
 3    Defendant's competency.
 4          THE COURT:  All right.  Thank you.
 5       Mr. Callaway, this is your change of plea
 6    hearing, your opportunity to change your plea from
 7    what currently is not guilty, to guilty.  Before you
 8    do that, we're going to talk about a number of things.
 9    And if you have any questions for me or for
10    Mr. Fivecoat, you just ask us.  You can just --
11    Obviously, you can speak with him off the record;
12    you can speak with me on the record.  And we'll --
13    we'll do that.
14       I'm going to be asking you a lot of questions,
15    and, so, just know that, if you make any untrue
16    statement during this hearing, you may be prosecuted
17    for a separate crime of perjury or false statement.
18       Do you understand?
19          THE DEFENDANT:  Yes, sir.
20          THE COURT:  You have the right to plead
21    guilty to the U.S. District Judge.  You may waive that
22    right, and by "waive," I mean, give up that right and
23    plead guilty before me here this afternoon.  I'm a
24    Magistrate Judge who works for that District Judge.
25       Do you understand your right to plead guilty to
```

August 21, 2013

Page 5

1    the District Judge?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And do you agree to waive that

4    right and plead guilty before me here today?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  And you've signed a consent form

7    which I have before me.  This is the original that's

8    being filed in your cause.  It appears to me you've

9    signed that consent form, consenting to me taking your

10   plea.  Is that correct?

11             THE DEFENDANT:  Yes, sir.

12             MR. TATUM:  Do you believe, Mr. Callaway,

13   that you've had sufficient time to fully discuss your

14   case with your attorney, including the discussion of

15   any defenses you may have to the charges against you?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Mr. Fivecoat, do you agree with

18   Mr. Callaway that you and he have had sufficient time

19   in this case?

20             MR. FIVECOAT:  Yes, your Honor.

21             THE COURT:  And do you believe that

22   Mr. Callaway has a factual as well as a rational

23   understanding of the proceedings against him?

24             MR. FIVECOAT:  Yes, your Honor.

25             THE COURT:  Let me ask you if you have had

August 21, 2013

Page 6

1    any difficulty in communicating with Mr. Callaway?

2             MR. FIVECOAT:  No, your Honor.

3             THE COURT:  Have you conveyed any and

4    all formal plea offers from the Government to

5    Mr. Callaway?

6             MR. FIVECOAT:  There were no plea offers in

7    this case, your Honor.  The Government has told me

8    that, if we pled to the indictment, that they would

9    not have an objection to the third point reduction for

10   the timely plea.  But, otherwise, there was no offer

11   that was extended.  I called Mr. Berry right before

12   this hearing again and confirmed, and he said that

13   there would be no offer extended in this case.

14             THE COURT:  All right.  Very well.

15        Mr. Callaway, are you satisfied with

16   Mr. Fivecoat's representation of you in this legal

17   matter?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Do you have any complaints about

20   his representation of you?

21             THE DEFENDANT:  No, sir.

22             THE COURT:  You were indicted on June 26th,

23   2013, by a Federal Grand Jury sitting here in the

24   Midland-Odessa Division of the Western District of

25   Texas, in the cause, MO-13-CR-187, in what appears to

August 21, 2013

Page 7

```
 1   be a seven-count -- six-count indictment.
 2        Did you receive a copy of that indictment and
 3   have you reviewed it with Mr. Fivecoat?
 4             THE DEFENDANT:  Yes, sir.
 5             THE COURT:  The indictment states that the
 6   Grand Jury charges:
 7        Count 1.  That on or about February 2nd, 2013,
 8   in the Western District of Texas, the Defendant,
 9   Harold Bruce Callaway, did employ, use, persuade,
10   induce, entice and coerce a minor to engage in
11   sexually explicit conduct for the purpose of producing
12   a visual depiction of such conduct, using materials
13   that have been mailed, shipped and transported in and
14   affecting interstate and foreign commerce by any
15   means, including by computer, in violation of Title
16   18, United States Code, Section 2251 Subparagraph (a).
17        Count 2.  That on or about February 2nd, 2013,
18   in the Western District of Texas, the Defendant,
19   Harold Bruce Callaway, did employ, use, persuade,
20   induce, entice and coerce a minor to engage in
21   sexually explicit conduct for the purpose of producing
22   a visual depiction of such conduct, using materials
23   that have been mailed, shipped and transported in
24   and affecting interstate and foreign commerce by any
25   means, including by computer, in violation of Title
```

August 21, 2013

Page 8

1    18, United States Code, Section 2251 Subparagraph (a).

2        Count 3.  Charges that on or about February 2nd,

3    2013, in the Western District of Texas, the Defendant,

4    Harold Bruce Callaway, did employ and use, persuade,

5    induce, entice and coerce a minor to engage in

6    sexually explicit conduct for the purpose of producing

7    a visual depiction of such conduct, using materials

8    that have been mailed, shipped and transported in

9    and affecting interstate and foreign commerce by any

10   means, including by computer, in violation of Title

11   18, United States Code, Section 2251 Subparagraph (a).

12       Count 4.  That on or about February 3rd, 2013,

13   in the Western District of Texas, the Defendant,

14   Harold Bruce Callaway, did employ, use, persuade,

15   induce, entice and coerce a minor to engage in

16   sexually explicit conduct for the purpose of producing

17   a visual depiction of such conduct, using materials

18   that have been shipped -- mailed, shipped and

19   transported in and affecting interstate and foreign

20   commerce by any means, including by computer, in

21   violation of Title 18, United States Code, Section

22   2251 Subparagraph (a).

23       Count 5.  That on or about March 7th, 2013,

24   in the Western District of Texas, the Defendant,

25   Harold Bruce Callaway, did knowingly produce,

August 21, 2013

Page 9

```
 1    distribute, receive and possess with the intent to
 2    distribute a visual depiction of any kind, including
 3    a drawing, cartoon, sculpture and painting that
 4    depicts a minor engaging in sexually explicit conduct
 5    and is obscene, in violation of Title 18, United
 6    States Code, Section 1466A Subparagraph (a)(1).
 7         Count 6.  That on or about March 7th, 2013,
 8    in the Western District of Texas, the Defendant,
 9    Harold Bruce Callaway, did knowingly produce,
10    distribute, receive and possess with the intent to
11    distribute a visual depiction of any kind, including
12    a drawing, cartoon, sculpture and painting that
13    depicts a minor engaging in sexually explicit conduct
14    and is obscene, in violation of Title 18, United
15    States Code, Section 1466A Subparagraph (a)(1).
16         A True Bill, signed by the Foreperson of the
17    Grand Jury.
18         Do you understand the -- the charges against
19    you in Counts 1 through 6 of that indictment, sir?
20              THE DEFENDANT:  Yes, sir.
21              THE COURT:  And, Mr. Callaway, you
22    understand that this indictment is merely a statement
23    of the charges, and is not in any way evidence against
24    you of any wrongdoing?  Do you understand that?
25              THE DEFENDANT:  Yes, sir.
```

August 21, 2013

Page 10

1           THE COURT:  And you have the right to plead

2    not guilty to these charges, to each and every one of

3    them, and to this entire indictment, and demand your

4    trial.  Do you understand?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Knowing all of that, is it still

7    your desire to plead guilty here today?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  Are you a citizen of the

10   United States?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Mr. Callaway, under the

13   Constitution and the laws of the United States, you

14   have the right to a trial by jury, you have the right

15   to the assistance of an attorney at that trial and at

16   every other stage of the proceedings.  If at any stage

17   of the proceedings you're unable to afford an

18   attorney, an attorney would be appointed for you by

19   the Court.

20      You have the right to confront and cross-examine

21   the Government's witnesses, the right to compel the

22   attendance of witnesses at your trial, and you have

23   the right to present evidence in your own behalf at

24   your trial.  Additionally, you're presumed to be

25   innocent, and the Government's required to prove your

August 21, 2013

Page 11

 1    guilt beyond a reasonable doubt before you could be

 2    found guilty.

 3         Finally, while you would have the right to

 4    testify, if you chose to do so, at your trial, no one

 5    could make you testify at your trial.  And if you

 6    chose to go to trial, yet not testify, no one would

 7    hold that against you, no one could or would hold that

 8    against you, and you would never have to explain your

 9    reasoning for not testifying.

10         Do you understand your rights?

11              THE DEFENDANT:  Yes, sir.

12              THE COURT:  Do you have any questions about

13    any of your rights?

14              THE DEFENDANT:  No, sir.

15              THE COURT:  Okay.  So, yes, you understand

16    your rights, and no, you don't have any questions

17    about your rights.  Right?

18              THE DEFENDANT:  That is correct, sir.

19              THE COURT:  Okay.  All right.

20         If you plead guilty, you're going to give up

21    these rights.  You're not going to have a trial

22    because you're going to give up that right to a

23    trial, and if you confess, you plead guilty, you're

24    confessing to the offense, so there wouldn't be a need

25    for a trial, of course.

August 21, 2013

Page 12

1        You'd be giving up these other rights I've told

2   you about, except for your right to your attorney.

3   Mr. Fivecoat's going to continue to represent you

4   through your sentencing hearing.  And that's going

5   to be very important for you.  He's going to continue

6   to try to get you the lowest and best possible

7   sentence.  However, you'll be giving up these other

8   rights, and you'll be giving up any defenses that you

9   have to the charges against you.

10       In a few months or so, typically sixty to

11  seventy-five days from today, you'll be before the

12  U.S. District Judge, Judge Junell, for sentencing.

13  He'll impose a sentence upon you after he considers

14  the contents of a presentence report, after he hears

15  from the attorneys, including your attorney who'll

16  speak for you, and after he hears from you.  He'll

17  then sentence you.

18       Even though he's sentencing you a few months or

19  so from today, Mr. Callaway, he'll be doing so because

20  of what you're doing today, in this court, under oath,

21  in giving up your rights and pleading guilty.

22       Do you understand the effect of giving up your

23  rights and pleading guilty?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  All right.  Understanding all of

August 21, 2013

Page 13

1   that, let me ask you.  Do you agree to give up your

2   rights and plead guilty to the count -- to the charges

3   in Counts 1 through 6 of your indictment that we've

4   discussed this afternoon?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Are you pleading guilty because

7   you are guilty, and for no other reason?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  All right.  Let's talk about the

10  statutory range of punishment you face for the

11  offenses to which you're pleading guilty.

12      Counts 1 through 4, the production of child

13  pornography, carry with them a minimum mandatory term

14  or imprisonment of fifteen years, up to, at most,

15  thirty years in prison; a minimum mandatory term of

16  five years, up to, at most, life of supervised release

17  upon your release from any term of imprisonment; a

18  fine not to exceed $250,000; and a $100 mandatory

19  special assessment pursuant to the Victims of Crime

20  Act.

21      Counts 5 and 6, that production of obscene visual

22  depiction of sexual abuse of a child, carry -- each

23  carries a minimum mandatory term of five years in

24  prison, up to, but not more than, twenty years in

25  prison; a minimum mandatory five years, up to life,

August 21, 2013

Page 14

1    of supervised release upon your release from any term

2    of imprisonment; a fine not to exceed $250,000; and

3    a mandatory $100 special assessment pursuant to the

4    Victims of Crime Act.

5         Do you understand your maximum statutory range

6    of punishment for each of those counts?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Mr. Fivecoat and Mr. Tatum, do

9    you agree with me on the statutory ranges I've given

10   him?

11             MR. FIVECOAT:  Yes, your Honor.

12             THE COURT:  All right.  Thank you,

13   Mr. Fivecoat.

14        Now, Mr. Callaway, let me tell you that -- you

15   understand that the District Court can stack or run

16   concurrently those -- the punishment for those counts,

17   for each of those six counts?  Do you understand that?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  He's not required by law to do

20   so.  But if he makes the determination that those are

21   separate and distinct offenses, makes all the

22   appropriate decisions on that, and findings, then he

23   can order that those punishments run consecutively.

24        Do you understand that?

25             THE DEFENDANT:  Yes, sir.

August 21, 2013

Page 15

1           THE COURT:  All right.  Now, when Judge

2   Junell sentences you, he'll do so after considering

3   guidelines established by the United States Sentencing

4   Commission.  When the case -- your hearing is over

5   today, I'm going to refer your case to the U.S.

6   Probation Office, and they're going to prepare this

7   presentence report.  I mentioned that a few moments

8   ago.

9       In that report, along with a bunch of other

10  information, there's going to be a calculation of what

11  the Probation Office believes to be your applicable

12  sentencing guideline range for this particular case.

13  They'll get to that range by taking factors such as

14  the nature and circumstances of the offense, the role

15  you've played in this offense, your conduct in this

16  offense, any criminal history that you have, any

17  criminal history that you don't have, and that all

18  goes into a calculation using the guidelines

19  established by the commission that I mentioned, that

20  United States Sentencing Commission.

21      They'll come up with what they think is your

22  applicable sentencing guideline range.  It'll be in

23  your written presentence report.  That's typically a

24  number of months on the low end to a number of months

25  on the high end.  And at your sentencing hearing, the

August 21, 2013

Page 16

 1    District Judge will consider that presentence report.

 2    He also will consider any input that the parties have,

 3    including you, through Mr. Fivecoat, of course.

 4        The District Judge, then, before your sentencing

 5    hearing is over, will determine for the one and only

 6    time in your case what your applicable sentencing

 7    guideline range actually is for this case.  He'll

 8    determine that, and he'll consider the applicable

 9    sentencing guideline range prior to sentencing you.

10    He's required to do that.  But it is a guideline range

11    only.  It's merely advisory to the Court.  He's

12    required to determine what the guideline range is, and

13    to determine, and, of course, to consider what the

14    guideline range is against you prior to sentencing

15    you.  He's not, however, required to sentence you

16    within the guideline range.  He's required, after

17    doing all that, to sentence you to a reasonable term

18    within your applicable statutory range of punishment,

19    which we've just gone over for each and every one of

20    these counts.

21        Do you understand?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  You need to understand that the

24    sentencing guidelines may recommend against you

25    receiving probation.

Federal Court Reporters of San Antonio, Inc.
210-340-6464

August 21, 2013

Page 17

 1         Do you understand that, sir?

 2             THE DEFENDANT:  Yes, sir.

 3             THE COURT:  You also should understand, of

 4    course, Mr. Callaway, that any discussions you've had,

 5    whether it be with Mr. Fivecoat, or another attorney,

 6    or anybody else, no matter who it may be, about what

 7    they think your guidelines are going to be, what they

 8    think your eventual sentence is going to be, those are

 9    estimates or guesses, predictions or projections,

10    because no one can accurately tell you what your

11    guidelines are going to be or what your eventual

12    sentence is going to be.

13         Do you understand that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Now, I've already told you, the

16    District Judge will decide, for the one and only time

17    in your case, at your sentencing hearing, what your

18    guideline range is.  And he's required by law to do

19    that so that he can then consider that guideline range

20    prior to sentencing you, and he's the only one that's

21    going to sentence you.

22         Does that make sense?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  All right.  Very well.

25         There's no parole in federal court.  The term of

August 21, 2013

Page 18

1    imprisonment you receive is the time you will serve,

2    less any good-time credit, should you receive

3    good-time credit by the Bureau of Prisons.

4         Do you understand that?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  You also should know that, of

7    course, we've talked about, even though there's no

8    parole, we've talked about supervised release for each

9    and every one of those counts, of course.

10        At the time you are sentenced to a term of

11   imprisonment in federal court, you'll be assessed a

12   term of supervised release, as well.  You know what

13   the statutory parameters are, each and every one of

14   those counts being a minimum -- mandatory minimum of

15   five years, up to, at most, life of supervised.

16        So, you'll know at the time you are sentenced how

17   much time of supervised release you have to serve.

18   You don't start serving that term of supervised

19   release until you step out of prison for the first

20   time, having completed your initial term of

21   confinement.

22        While you're on supervised release, Mr. Callaway,

23   you'll be required to comply with various conditions

24   of that release.  Your failure to comply with any of

25   those conditions may result in the revocation of your

August 21, 2013

Page 19

1    supervised release and the imposition of an additional

2    term of confinement.

3        Do you understand supervised release?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Let's talk about restitution.

6    In addition to any term of imprisonment or fine that

7    may be imposed, you may be required to make

8    restitution for property or money lost or even

9    personal injury resulting from the offense.

10       If there is any restitution claimed--I'm not

11   telling you there will be--if there is, however, you

12   will know about that before you get to your sentencing

13   hearing.  Mr. Fivecoat will receive that either in the

14   presentence report, or maybe, even more particularly,

15   in an addendum to the presentence report, as that

16   information comes in.

17       At that sentencing hearing, certainly you would

18   have the right to argue about that restitution, if

19   there is restitution.  I'm not saying there is going

20   to be, I'm just saying if there is, you have the right

21   to argue about that.  Mr. Fivecoat, of course, leading

22   your defense team, will certainly do that.  But keep

23   in mind that -- And you'd be arguing for, obviously,

24   less amount of restitution or no amount of

25   restitution, but the District Judge, at some point in

August 21, 2013

Page 20

1   the hearing, will determine what that restitution, if

2   any, is.

3        Do you understand that?

4             THE DEFENDANT:  Yes, sir.

5             THE COURT:  Very well.

6        Now, any questions about supervised release or

7   anything else we have talked about to this point?

8             THE DEFENDANT:  No, sir.

9             THE COURT:  Are you pleading guilty freely

10  and voluntarily, and with full knowledge of the

11  consequences?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  Are you -- I'm sorry?

14            THE DEFENDANT:  You said --

15            THE COURT:  Do you want me to repeat the

16  question?

17            THE DEFENDANT:  Yes, please.

18            THE COURT:  That's all right.

19       Are you pleading guilty freely and voluntarily,

20  and with full knowledge of the consequences?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  And we've talked about the

23  consequences this afternoon.  Right?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  Has anyone threatened you,

August 21, 2013

Page 21

```
1    coerced you or forced you in any way to plead guilty
2    here today, sir?
3            THE DEFENDANT:  No, sir.
4            THE COURT:  Has anyone made any promise to
5    you as to what your guidelines will be?
6            THE DEFENDANT:  No.
7            THE COURT:  Has anyone made any promise to
8    you as to what your sentence will be?
9            THE DEFENDANT:  No.
10           THE COURT:  And that -- those -- that's
11   not -- those aren't trick questions, I'm just making
12   sure you remember, --
13           THE DEFENDANT:  Right.
14           THE COURT:  -- nobody can promise you what
15   those are, only the District Judge is going to decide
16   what they are.  Right?
17           THE DEFENDANT:  Yes, sir.
18           THE COURT:  Has anyone made any promise to
19   you, of any kind, that's causing you to plead guilty?
20           THE DEFENDANT:  No.
21           THE COURT:  I'm sorry?
22           THE DEFENDANT:  No, sir.
23           THE COURT:  And you can understand,
24   Mr. Callaway, why it would be important for us to know
25   if someone had promised you, if you were relying on
```

August 21, 2013

Page 22

```
 1    some promise someone had made, right, --
 2                THE DEFENDANT:  Yes, sir.
 3                THE COURT:  -- in order to plead guilty?
 4         Now, at your sentencing hearing, the Government
 5    may, if they choose to do so, make recommendations
 6    that would benefit you, recommendations that would
 7    help you, that would be a good thing for you.  The
 8    Government may make such recommendations; they may
 9    not.  And I'm not telling you they're going to, I'm
10    just telling you, if they do.
11         Now, if they don't, no one, including the Court,
12    can make the Government make any such recommendations.
13         But, if they were to do so, then that would be a
14    good thing for you, you would obviously like the
15    District Court to accept or follow any such
16    recommendations.  But he may not.  Even if any such
17    recommendations are made by the Government, the -- the
18    District Judge may decline to accept, or reject, any
19    such recommendations.
20         If that were to be the case, that would not
21    entitle you to any additional rights, such as the
22    right to withdraw your guilty plea.
23         Do you understand, sir?
24                THE DEFENDANT:  Yes.
25                THE COURT:  I'm sorry?
```

August 21, 2013

Page 23

 1              THE DEFENDANT:  Yes, sir.

 2              THE COURT:  Okay.  Very well.

 3          Now, any questions to this point?

 4              THE DEFENDANT:  No, sir.

 5              THE COURT:  There's a written factual basis

 6    filed in your cause.  It's a two-page document

 7    entitled Factual Basis.  And it looks like the second

 8    page is entirely the signature page, and it looks to

 9    me like you've signed that in the upper left-hand

10    corner of the factual basis; is that right?

11              THE DEFENDANT:  Yes.  Yes, sir.

12              THE COURT:  Prior to signing your factual

13    basis, did you read the factual basis or have it read

14    to you, and did you review it with your lawyer?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  Having reviewed that, then,

17    of course, Mr. Callaway, having signed your factual

18    basis, and testifying to it here today, you are

19    stating that the facts in the factual basis are true,

20    and that the Government could prove these facts beyond

21    a reasonable doubt, were you to go to trial.

22          And it says that on February 2nd, 2013, and

23    February 3rd, 2013, that you, Mr. Harold Bruce

24    Callaway, had temporary custody of a five-year-old

25    juvenile relative.  On both of those days, you,

August 21, 2013

Page 24

1    Mr. Callaway, used your cell phone to take photos of

2    the juvenile in sexually explicit photos.  For

3    example, in each of the images charged in the

4    indictment -- in the indictment in Counts 1, 2, 3

5    and 4, the juvenile is reclining with legs spread wide

6    so that the pubic area is displayed in a lascivious

7    manner. In one photo the child is holding a dollar

8    bill while legs are spread wide.  In each photo, you,

9    Mr. Callaway, directed the child to pose in the

10   sexually explicit manner.  There were more than ten

11   sexually explicit photos taken by you, Mr. Callaway,

12   of this same five-year-old juvenile relative.

13        On May 7th, 2013, you, Mr. Callaway, manipulated

14   two of the photos of the child that you took on

15   February 2nd and February 3rd.  Specifically, you,

16   Mr. Callaway, cropped the sexually explicit photos so

17   that the only -- that only the exposed pubic area of

18   the child is in the frame of the photo.  The child's

19   face and limbs were eliminated from the photos so that

20   the only -- that only the most obscene version of the

21   original photo remained.

22        You, Mr. Callaway, admit that the phone you used

23   to take the photos and crop the photos was

24   manufactured outside the State of Texas, and,

25   therefore, it would have had to travel in interstate

Federal Court Reporters of San Antonio, Inc.
210-340-6464

August 21, 2013

Page 25

```
 1   or foreign commerce before arriving in Texas for

 2   your -- for you to possess, Mr. Callaway.

 3        So, Mr. Callaway, do you agree that those facts

 4   are true?

 5             THE DEFENDANT:  Yes, sir.

 6             THE COURT:  Do you have any objection or

 7   disagreement with the facts stated in the factual

 8   basis?

 9             THE DEFENDANT:  No, sir.

10             THE COURT:  Does the factual basis

11   accurately state what you did, and is that what you're

12   pleading guilty to here today?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Having gone over your indictment

15   and all those counts with you, as well as talking to

16   you in some detail about your factual basis, let me

17   ask you again, do you understand the nature of the

18   charge against you?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Or the charges.  Excuse me.

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Do you have any questions about

23   the charges or anything else we've talked about?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  Is there anything, Mr. Callaway,
```

August 21, 2013

Page 26

1   that you do not understand or that you would like to

2   speak privately with Mr. Fivecoat about before we

3   conclude your hearing?

4          THE DEFENDANT:  He's covered all bases, sir.

5          THE COURT:  I'm sorry?

6          THE DEFENDANT:  Everything's -- I

7   understand.

8          THE COURT:  Okay.  You understand

9   everything?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Okay.  There's nothing you don't

12   understand?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  Okay.  After having now gone

15   through your -- all these items and all -- and your --

16   all of your rights, is it still your desire to plead

17   guilty to these charges?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Let me ask you, then,

20   Mr. Callaway, as to Count 1, charging you with

21   production of child pornography, how do you plead,

22   guilty or not guilty?

23          THE DEFENDANT:  Guilty.

24          THE COURT:  As to Count 2, charging you with

25   production of child pornography, how do you plead,

August 21, 2013

Page 27

```
 1   guilty or not guilty?

 2              THE DEFENDANT:  Guilty.

 3              THE COURT:  As to Count 3, charging you with

 4   production of child pornography, how do you plead,

 5   guilty or not guilty?

 6              THE DEFENDANT:  Guilty, sir.

 7              THE COURT:  As to Count 4, charging you with

 8   production of child pornography, how do you plead,

 9   guilty or not guilty?

10              THE DEFENDANT:  Guilty.

11              THE COURT:  As to Count 5, charging you with

12   production of obscene visual depiction of sexual abuse

13   of a child, how do you plead, guilty or not guilty,

14   sir?

15              THE DEFENDANT:  Guilty.

16              THE COURT:  And as to Count 6, how do you

17   plead to Count 6, production of obscene visual

18   depiction of sexual abuse of a child, guilty or not

19   guilty?

20              THE DEFENDANT:  Guilty.

21              THE COURT:  The Court then finds that the

22   Defendant is competent to stand trial; the Defendant

23   fully understands the nature of the charge and the

24   penalties; the Defendant understands his

25   Constitutional and statutory rights, and desires to
```

August 21, 2013

Page 28

1    waive them; the Defendant's plea is freely, knowingly

2    and voluntarily made; and there is a factual basis to

3    support the plea of guilty.

4        I'll recommend to the District Judge,

5    Mr. Callaway, that he accept your plea of guilty,

6    enter a judgment against you, and set you for a

7    sentencing hearing.  Your case will be referred now to

8    the U.S. Probation Office, where they will prepare

9    that presentence report that we talked about.

10   Mr. Fivecoat's going to guide you through that

11   process.  He then will receive a copy of your report,

12   well before your sentencing hearing, so that he may

13   file any legitimate objections, if there are any.

14       And once he does that, then, of course, the

15   Government has the same opportunity, if they have

16   objections.  If there are any objections that are

17   still -- that are filed and still unresolved by the

18   time you get to your sentencing hearing, then

19   Mr. Fivecoat will argue those on your behalf.  He'll

20   also speak for you.  You have the right and you'll

21   have the opportunity to do the same, to speak to the

22   District Judge before he sentences you, as well.

23       Mr. Fivecoat, did you have something else we need

24   to add on the record today?

25            MR. FIVECOAT:  No.  I believe that covers

August 21, 2013

Page 29

1    it, your Honor.

2           THE COURT:   Okay.  Mr. Callaway, do you

3    understand everything we've done today?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:   Do you have any questions for

6    me?

7           THE DEFENDANT:  No, sir.

8           THE COURT:  Mr. Tatum, anything further?

9           MR. TATUM:  Nothing from the Government,

10   your Honor.

11          THE COURT:  All right.  Thank you,

12   Mr. Callaway.  Good luck to you.

13              (Recess.)

14              ************

15

16      I, Court approved transcriber, certify that the
     foregoing is a correct transcript from the official
17   electronic sound recording of the proceedings in the
     above-entitled matter.

18

19   /s/ Darla Messina              February 26, 2014
     Signature of Approved Transcriber    Date

20

     Darla Messina
21   Typed or Printed Name

22

23

24

25

Federal Court Reporters of San Antonio, Inc.
210-340-6464

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff. | § | |
| | § | CASE NO.: 07:16-CV-54 |
| v. | § | |
| | § | USDC Orig. NO.:07-13-CR-187 |
| HAROLD BRUCE CALLAWAY, | § | |
| | § | |
| Defendant. | § | |

## AFFIDAVIT IN RESPONSE TO CALLAWAY'S MOTION TO VACATE

BEFORE ME, the undersigned authority, on this day personally appeared, Raymond K. Fivecoat, who, after being duly sworn on his oath, deposed and stated:

"My name is Raymond K. Fivecoat. I am an attorney licensed in the State of Texas (1999) and have been admitted to practice the Western District of Texas (2000). I am also licensed to practice in the State of Oklahoma, and have been admitted to practice in the Northern and Southern Districts of Texas, Northern District of Oklahoma, as well the Fifth Circuit Court of Appeals.

This affidavit is in response to the claims of ineffective assistance of counsel made by my former client, Harold Bruce Callaway.

First foremost, I dispute most, if not all, of the content of the brief filed provided by Mr. Callaway in support of his motion. While several of the items that Mr. Callaway addresses were discussed, I wholly dispute the play-by-play description of the conversations between Mr. Callaway and myself. Mr. Callaway was disgruntled and upset to be incarcerated at the time of our first meeting. That demeanor did not change throughout the representation.

In each conversation I had with Mr. Callaway during the course of the representation, I advised him that he had three basic options that he could exercise to resolve this pending criminal case. The first option was to go to a trial, either by jury or in front of the bench. His second option was to enter an open plea of guilty to the indictment. His third option was to enter a guilty plea to the indictment through a written plea agreement with the Government.

In discussing his right to a jury or bench trial, we also discussed the options that the Court has in regards to sentencing. We also discussed the Court's right to stack the various offenses, and to enter consecutive sentences. We discussed the presumption under federal law in favor of consecutive, rather

**GOVERNMENT
EXHIBIT
B**

than concurrent sentences.  We discussed the maximum range of punishment available under the statute for each count, as well as how the guidelines could apply to the case, assuming the Court followed the guidelines, as the guidelines were discretionary.  We also discussed the ability for the Court to upwardly or downwardly depart from the sentence recommended under the guidelines.

Throughout the representation, I continued to try to convince the AUSA, Austin Berry, to offer my client an agreed plea and sentence under Rule 11(c)(1)(C), but Mr. Berry continued to deny these requests.  I discussed these repeated attempts and the AUSA's unwillingness to enter into an agreed plea bargain with Mr. Callaway.  We continued to discuss Mr. Callaway's right to trial, as well as the benefits of an open plea (for example, the ability to secure a sentence reduction under the guidelines for acceptance of responsibility, something that would not be available to him if he went to trial).  Lastly, we regularly spoke about, (and the Magistrate Court advised Mr. Callaway at the time of the plea), the possibility that the District Court could stack his sentences.

Mr. Callaway and I discussed that it was possible for him to receive a concurrent sentence from the Court, especially if the Government was agreeable, which it was not.  Perhaps most importantly, Mr. Callaway and I spoke about the fact that there is no way to predict what the District Court would do at the time of sentencing, regardless of whether he entered into an open plea, plea with an agreement, or was found guilty at trial.  I provided Mr. Callaway with an educated guess as to what the Judge might do based upon my experience with other clients, but I always cautioned that, as the Magistrate states during a plea colloquy, these predictions are merely educated guesses, and the Sentencing Court has the discretion and ability to do as it sees fit.  Lastly, we had also discussed the risk and benefit associated with a jury trial as well.

After all of the warnings from the Court, and the multiple conversations between Mr. Callaway and myself regarding the punishment ranges available based upon a conviction by plea or trial, Mr. Callaway elected to enter a guilty plea to each of the Counts.  The admonitions about his risks at punishment were reinforced by the Magistrate Court at the time of the plea as well.  (See Footnote 2 of the FINDINGS OF FACT AND RECOMMENDATION ON FELONY GUILTY PLEA BEFORE THE UNITED STATES MAGISTRATE JUDGE).

Near the time of sentencing, after his guilty plea was entered, Mr. Callaway had a change of heart regarding his plea, and requested to file to withdraw his plea.  After discussions with Counsel, Mr. Callaway changed his mind again, and instructed me to seek to withdraw his plea, and instructed me not to pursue any of the objections I had filed in regards to the PSR.

Mr. Callaway also fails to understand the law about units of prosecution, as he claims in the second count of his complaint.  The units of prosecution were

discussed with Mr. Callaway, and he argued, as he does not, "that is not the law". Mr. Callaway also claims he received ineffective assistance of counsel for not moving to dismiss Counts 2-4, yet Mr. Callaway specifically instructed Counsel to not pursue any objections.   The Court addressed the objections I raised at sentencing, and Mr. Callaway was further given an opportunity to complain prior to the entry of sentence about any other matter, and elected not to do so.

In his third claim, Mr. Callaway argues that he received ineffective assistance of counsel because of a failure to object to hearsay testimony at sentencing.  First, Federal Rules of Evidence 1101(d)(3) indicates that the rules do not apply to "miscellaneous proceedings such as:.....sentencing".  As such, hearsay objections were not lodged to the testimony of the witnesses at the sentencing.  Second, to the extent that these Rules could have applied, we were given the opportunity to cross-examine the witness, the very witness who was called to testify due to the objections that were raised to the PSR regarding "hearsay" claims used to substantiate a five-level increase for pattern of behavior, as well as the objections to the five level increase itself.   Third, Mr. Callaway indicates he was harmed because these matters were not appealed, yet Mr. Callaway forgets that Counsel was allowed to withdraw, and another attorney was to be appointed to handle Mr. Callaway's appeal.  Lastly, prior to his entering a guilty plea, during our discussions, I explained to Mr. Callaway that these claims could and most likely would be raised in this manner, whether at trial or at sentencing.  Mr. Callaway was well aware of the issues and the risks before he ever entered into a guilty plea to any count in this case.

"Further, Affiant sayeth not."

Raymond K. Fivecoat

SUBSCRIBED AND SWORN TO BEFORE ME, by the said Raymond K. Fivecoat, on the 17th day of May, 2016, to certify which witness my hand and official seal.

NOTARY PUBLIC, STATE OF TEXAS

ANGELICA F URIAS
Notary ID #126762261
My Commission Expires
December 30, 2016